# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

DWARVEN FORGE, LLC,
  *Plaintiff,*

   v.

LAWRENCE WHITAKER & DESIGN
MECHANISM, INC.,
  *Defendants.*

No. 3:17-cv-2053 (VAB)

## RULING AND ORDER ON
### MOTION FOR SANCTIONS, MOTION TO QUASH, MOTION TO STRIKE, AND AMENDED MOTION FOR SUMMARY JUDGMENT

On December 7, 2017, Dwarven Forge, LLC ("Plaintiff" or "Dwarven Forge"), filed this

lawsuit against Lawrence Whitaker and Design Mechanism, Inc. ("Design Mechanism")

(collectively "Defendants"), alleging (1) unfair competition; (2) infringement of common law

trademark rights; and (3) unfair competition in violation of the Lanham Act, 15 U.S.C. §

1125(a). Compl., ECF No. 1 (Dec. 7, 2017).

Continuing disputes in this ongoing litigation have given rise to a number of motions,

mostly discovery-related.

The Court addresses here the following pending motions: Defendants' motion for

sanctions and/or motion to compel related to the deposition of Stefan Pokorny, the CEO of

Dwarven Forge, Defs.' Mot. for Sanctions and/or Mot. to Compel, ECF No. 87 (Feb. 13, 2020)

("Defs.' Mot. for Sanctions"); Plaintiff's motion to quash the deposition of Mr. Pokorny, Pl.'s

Mot. Quash, ECF No. 90 (Feb. 15, 2020) ("Pl.'s Mot. to Quash"); and Defendants' motion to

strike Plaintiff's reply to its motion to quash, Def.'s Mot. to Strike Pl.'s Reply Br., ECF No. 103

(Mar. 3, 2020) ("Defs.' Mot. to Strike"). The Court will also rule on Dwarven Forge's amended

motion for summary judgment, Am. Mot. and Mem. in Supp. of Mot. for Summ. J., ECF No. 94 (Feb. 21, 2020) ("Pl.'s Am. Mot. Summ. J.").

For the reasons explained below, the motion to strike is **DENIED**; the motion to compel Mr. Pokorny's deposition is **GRANTED** and the motion for sanctions is **GRANTED** with respect to the $405.80 in costs associated with the cancelled trip to take Mr. Pokorny's deposition, but otherwise **DENIED without prejudice to renewal**, in the event Mr. Pokorny continues to avoid being deposed; the motion to quash is **DENIED**; and the amended motion for summary judgment is **DENIED without prejudice**.

## I.     BACKGROUND

### A.  Factual Allegations[1]

Dwarven Forge is a Connecticut limited liability company in the commercial role-playing game ("RPG") industry. Compl. ¶ 1. Stefan Pokorny, the CEO of Dwarven Forge, allegedly created the World of Mythras, a medieval fantasy world, when he was a teenager in the 1980s. *Id.* ¶ 13.

Mr. Whitaker, an individual and a citizen of Canada, allegedly "engaged in selling books in the field of fantasy and science fiction, namely role-playing books under the infringing alleged trademark and misrepresentation of origin Mythras." *Id.* ¶ 2.

Design Mechanism, a Canadian corporation, with the same place of business as Mr. Whitaker, allegedly is in the business of "selling books and other products pertaining to fantasy role playing games since July 15, 1978 under the trademark Runequest." *Id.* ¶ 3. In the summer of 2016, Design Mechanism allegedly "switched from its Runequest trademark to selling the identical products under Dwarven Forge's trademark Mythras." *Id.*

---

[1] Because Dwarven Forge did not file a proper Local Rule 56(a)1 Statement of Undisputed Material Facts, as discussed further later, all factual allegations are taken from the Complaint.

In 1996, Mr. Pokorny allegedly founded Dwarven Forge. *Id.* ¶ 19. Over the years, Mr. Pokorny allegedly has "become a celebrity in the gaming community." *Id.* ¶ 20. He allegedly has acted as a dungeon master "creating terrain and running players through his well-known campaign world of Mythras[] . . . for over 30 years." *Id.* ¶ 23.

On January 14, 2016, Mr. Whitaker allegedly filed a Canadian trademark application for the "Mythras" mark as applied to books and board games. *Id.* ¶ 38. Dwarven Forge alleges this description "was deceptive and incorrect, because it hid the nature of the goods as gaming instructions and role playing games." *Id.*

On February 24, 2016, a Dwarven Forge executive, allegedly "acting without an attorney, filed an application with the U.S. Patent and Trademark Office ["USPTO"] to register the trademark MYTHRAS for 'tabletop games.'" *Id.* ¶ 45.

On May 5, 2016, Defendants allegedly filed a trademark application with the USPTO, which Dwarven Forge disputes. *Id.* ¶¶ 46–48.

"Dwarven Forge uses publishing, the Internet, advertising, and its various promotional activities and initiatives to develop a brand identity with RPG gaming product consumers, including the gamer community and the industry. Dwarven Forge's activities involve use of its Mythras Trademark." *Id.* ¶ 51. In brief, Dwarven Forge alleges Defendants' actions sound in unfair competition and trademark infringement. *Id.* ¶¶ 61–79.

### B.  Procedural History

The Court assumes familiarity with the underlying background of this trademark infringement action and will only recite the procedural history relevant to these motions.

Since Dwarven Forge initiated this lawsuit on December 7, 2017, Compl., the Court has held two discovery conferences, *see* Joint. Mot. for Disc. Dispute, ECF No. 64 (May 23, 2019); Second Mot. for Disc. Conf., ECF No. 77 (Oct. 18, 2019).

On December 12, 2019, the Court stated in a separate order:

> To ensure the expeditious resolution of any discovery disputes that may arise until the close of discovery on January 31, 2020, the Court will suspend its normal practices and will no longer entertain motions for discovery conferences.
>
> To the extent a discovery issue warrants relief under the Federal Rules of Civil Procedure, the parties may file the appropriate motion, i.e., a motion to compel or a motion for a protective order, without a discovery conference. Any response to any motion filed for discovery relief shall be filed within seven (7) days, and any reply is due within three (3) days. Consistent with Rule 6 of the Federal Rules of Civil Procedure, if the deadline for a filing "is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(1)(C).

 Order, ECF No. 86 (Dec. 12, 2019).

On February 13, 2020, Defendants filed a motion for sanctions and, in addition or alternatively, a motion to compel Mr. Pokorny to appear for his deposition. Defs.' Mot. for Sanctions; Kaiser Aff., ECF No. 88 (Feb. 13, 2020).

On February 14, 2020, Dwarven Forge moved for summary judgment and filed as support a memorandum of law and several exhibits, but it filed no statement of material facts. Mot. for Summ. J., ECF No. 89 (Feb. 14, 2020).

On February 15, 2020, Dwarven Forge moved to quash the deposition of Mr. Pokorny, the alleged predecessor-in-interest to Dwarven Forge in using the trademark MYTHRAS and the CEO of Dwarven Forge. Pl.'s Mot. to Quash; *see also* Compl. ¶ 1.

On February 20, 2020, Dwarven Forge responded to the motion for sanctions. Pl.'s Opp'n to Defs.' Mot. for Sanctions, ECF No. 91 (Feb. 20, 2020) ("Pl.'s Opp'n Sanctions").

On February 21, 2020, Dwarven Forge filed an amended motion for summary judgment, including again a memorandum of law and several exhibits, most of which were declarations of individuals, but it still filed no statement of material facts. Pl.'s Am. Mot. Summ. J.; Exs., ECF Nos. 9–98 (Feb. 21, 2020).

On February 24, 2020, Defendants replied to their motion for sanctions and opposed Dwarven Forge's motion to quash. Reply in Supp. of Defs.' Mot. for Sanctions, ECF No. 99 (Feb. 24, 2020) ("Defs.' Reply Sanctions"); Defs.' Resp. to Pl.'s Mot. to Quash, ECF No. 100 (Feb. 24, 2020) ("Defs.' Resp. Quash").

On February 28, 2020, Dwarven Forge filed its reply in support of its motion to quash. Pl.'s Reply to Opp'n of Defs. to Mot. for Protective Order, ECF No. 102 (Feb. 28, 2020) ("Pl.'s Reply Quash").

On March 3, 2020, Defendants moved to strike Dwarven Forge's reply to its motion to quash, ECF No. 102. Defs' Mot. to Strike.

On March 4, 2020, Dwarven Forge filed a cross-motion[2] and response to Defendants' motion to strike. Pl.'s Cross-Mot. and Resp. to Defs.' Mot. to Strike, ECF No. 104 (Mar. 4, 2020) ("Pl.'s Resp. Strike").

On March 11, 2020, Defendants objected to Dwarven Forge's motion for summary judgment for failing to comply with procedural rules. Defs.' Obj. to Pl.'s Am. Mot. Summ. J., ECF No. 105 (Mar. 11, 2020) ("Defs.' Obj."); Mem. of Law in Supp. of Def.'s Obj., ECF No. 105-1 (Mar. 11, 2020) ("Defs.' Obj. Mem.").

---

[2] Although the filing is titled both as a cross-motion and a response, the Court cannot discern what other relief Dwarven Forge seeks. Consequently, the Court construes it as a response to Defendants' motion to strike.

On April 7, 2020, the Court found as moot Dwarven Forge's earlier motion for summary judgment, ECF No. 89, in light of the amended motion for summary judgment, ECF No. 94. Order, ECF No. 106 (Apr. 7, 2020).

On the same day, Dwarven Forge filed a memorandum opposing Defendants' objection to its motion for summary judgment, including a statement of material facts, which cited mainly to declarations, including of Mr. Pokorny. Mem. Opp. Def.'s Obj., ECF No. 108 (Apr. 7, 2020) ("Pl.'s Reply Summ. J."); Statement of Uncontested Facts, ECF No. 108-1 (Apr. 7, 2020) ("Pl.'s SUF").

## II.   STANDARD OF REVIEW

### A.  Motion to Strike

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike under Rule 12(f) "are generally disfavored and will not be granted unless the matter asserted clearly has no bearing on the issue in dispute." *Corr. Officers Benevolent Ass'n of Rockland Cty. v. Kralik*, 226 F.R.D. 175, 177 (S.D.N.Y. 2005); *see also Gierlinger v. Town of Brant*, No. 13-CV-00370 AM, 2015 WL 3441125, at *1 (W.D.N.Y. May 28, 2015) ("Because striking a [part] of a pleading is a drastic remedy[,] motions under Rule 12(f) are viewed with disfavor by the federal courts and are infrequently granted." (internal quotation marks omitted)).

"Whether to grant or deny a motion to strike is vested in the trial court's sound discretion." *Tucker v. Am. Int'l Grp., Inc.*, 936 F. Supp. 2d 1, 15 (D. Conn. 2013) (citing *Hollander v. Am. Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999); *Impulsive Music v. Pomodoro Grill, Inc.*, No. 08-CV-6293, 2008 WL 4998474, at *2 (W.D.N.Y. Nov. 19, 2008)).

### B. The Various Discovery Motions

Recently amended on December 1, 2015, Rule 26(b)(1) of the Federal Rules of Civil Procedure recognizes that "[i]nformation is discoverable . . . if it is relevant to any party's claim or defense and is proportional to the needs of the case." Fed R. Civ. P. 26, Advisory Committee Notes to 2015 Amendments. Even after the 2015 amendments, "[r]elevance is still to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *Bagley v. Yale Univ.*, No. 3:13-cv-01890 (CSH), 2015 WL 8750901, at *7 (D. Conn. Dec. 14, 2015) (quoting *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14 Civ. 9792, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 12, 2015)).

But "district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016). Indeed, "[a] trial court enjoys wide discretion in its handling of pre-trial discovery . . . ." *Cruden v. Bank of N.Y.*, 957 F.2d 961, 972 (2d Cir. 1992); *see In Re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008) (the district court has "wide latitude to determine the scope of discovery."); *Gen. Houses v. Marloch Mfg. Corp.*, 239 F.2d 510, 514 (2d Cir. 1956) ("The order of examination is at the discretion of the trial judge . . . ."); *Mirra v. Jordan*, No. 13-CV-5519, 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016) ("Motions to compel are left to the court's sound discretion.").

Rule 37 allows the Court to impose a variety of sanctions for discovery-related abuses and affords the Court "broad discretion in fashioning an appropriate sanction." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 101 (2d Cir. 2002); *see also Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991) ("Provided that there is a clearly

articulated order of the court requiring specified discovery, the district court has the authority to impose Rule 37(b) sanctions for noncompliance with that order.").

Under Rule 45(d)(3)(A), the court "must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). Motions to quash a subpoena are "entrusted to the sound discretion of the district court." *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003) (quoting *United States v. Sanders*, 211 F.3d 711, 720 (2d Cir. 2000)).

### C.  Motion for Summary Judgment

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in the original).

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.

1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

When deciding a motion for summary judgment, a court may review the entire record, including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any other evidence on file to determine whether there is any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pelletier v. Armstrong*, No. 3:99-cv-1559 (HBF), 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007). In reviewing the record, a court must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in [his] favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013)

(citation omitted). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the non-moving party for the issue on which summary judgment is sought, then summary judgment is improper. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

## III.   DISCUSSION

### A.  The Motion to Strike

Under Local Rule 7(d), "[a]ny reply memorandum must be filed within fourteen (14) days of the filing of the responsive memorandum to which reply is being made . . . [and] may not exceed 10 pages." D. Conn. L. Civ. R. 7(d). Furthermore, "[a] reply memorandum must be strictly confined to a discussion of matters raised by, and must contain references to the pages of, the memorandum to which it replies." *Id.*

Defendants seek to strike Dwarven Forge's reply to its motion to quash, ECF No. 102 ("Pl.'s Reply"), as "untimely, over-sized, not limited to responding to Defendants' response, and contain[ing] verifiably false information." Defs.' Mot. to Strike at 1. They contend that, based on the Courts' December 12, 2019 Order, because Defendants filed their response on February 24, 2020, Plaintiff's Reply was due February 27, 2020, and was therefore late as filed on February 28, 2020. *Id.* Defendants also take issue with Dwarven Forge's eleven-page argument, with nineteen exhibits, and submit Plaintiff's Reply is "over-sized" and contains "a number of demonstrably false statements." *Id.* at 1–2.

In response, Dwarven Forge first notes that "the subject brief had numerous blank lines between sections and generous margins" and, reformatted, is "only nine pages without the half page caption." Pl.'s Resp. Strike at 1 (citing the reformatted brief, attached as exhibit A). According to Dwarven Forge, "the reply simply details the presence of the evidence and its

examination in documents produced prior to the deposition and in the deposition transcript." *Id.* at 2. As for the one-day delay in filing, counsel for Dwarven Forge submits he "has assumed a double workload" due to "the one other attorney in this office quit[ting] . . . last month." *Id.* at 3. Dwarven Forge seeks excusal of the delay, and argues the motion to strike should be denied. *Id.*

The Court agrees.

Although the Court was explicit in its December 12, 2019 Order that "any reply [related to any motion filed for discovery relief] is due within three (3) days," the Court may excuse any delay[3] for good cause. Here, the delay was only one day, so any prejudice to Defendants was minimal; and furthermore, counsel for Dwarven Forge has submitted justification due to the decrease in staff at his law firm.

As to the eleven-page reply, instead of the ten-page memorandum, consistent with this Court's inherent authority to manage its docket with a "view toward the efficient and expedient resolution of cases," see *Dietz*, 136 S. Ct. at 1892, the Court will not strike Plaintiff's reply, particularly because Dwarven Forge has submitted a reformatted reply memorandum within the page limit. Any issues with formatting could also be attributed to counsel's increased workload.

To the extent Defendants challenge the responsiveness of Dwarven Forge's reply memorandum to Defendants' opposition, the Court will consider those objections when considering the merits of the motion to quash. *See Tucker*, 936 F. Supp. 2d at 15 ("Whether to grant or deny a motion to strike is vested in the trial court's sound discretion." (internal citations omitted)).

Accordingly, the Court will deny the motion to strike.

---

[3] The Court also notes that although Plaintiff's Reply was one day late, it was well within the timeline set by the Local Rules. *See* D. Conn. L. Civ. R. 7(d) ("Any reply memorandum must be filed within fourteen (14) days of the filing of the responsive memorandum to which reply is being made[.]").

### B.  The Motions Related to Mr. Pokorny's Deposition

Defendants argue for sanctions "striking Plaintiff's Complaint and/or limiting its ability to present evidence," or an order "compelling Plaintiff to appear for its noticed 30(b)(6) deposition and extending Defendant's deadline for dispositive motions." Defs.' Mot. for Sanctions at 1. Defendants emphasize the numerous changes in dates and locations of Mr. Pokorny's deposition. *Id.* at 2–4. According to Defendants, Dwarven Forge has been "evading th[e] deposition [of Mr. Pokorny] since the Notice was served in November of 2019," and has necessitated multiple discovery related filings and motions for discovery conferences. *Id.* at 5. Defendants contend that "refusal to sit for a 30(b)(6) deposition after two years of litigation (and after the close of discovery) will prejudice Defendant's ability to defend against Plaintiff's claims." *Id.* at 6.

Defendants request an order "striking Plaintiff's Complaint and/or prohibiting Plaintiff from seeking to introduce testimony or evidence that it has made trademark use of the MYTHRAS mark on any product prior to the filing of the instant Action." *Id.* at 6. Alternatively, they seek an order compelling: "(1) Plaintiff to schedule its 30(b)(6) deposition; (2) the deposition to occur in Chicago (the location of Defendant's attorney); and (3) an extension of the deadline for filing [Defendants'] Dispositive Motions . . . due to the fact that Plaintiff's deposition is unlikely to occur within the time currently allowed for such motions." *Id.* Defendants also seek attorneys' fees and costs attendant to the deposition and instant motion. *Id.*

In response, Dwarven Forge alleges that facts support its "uncontested and much earlier use" of the mark. Pl.'s Opp'n Sanctions at 1–3. According to Dwarven Forge, Defendants' counsel was not responsive, and when its counsel offered Mr. Pokorny for deposition on February 20 (the scheduled date) or 22, but in New York City instead of Seattle, Defendants'

counsel "indicated it preferred to make the subject motion." *Id.* at 4. Dwarven Forge contends that "the above is a distraction," and "there is not even arguably any good faith position upon which Defendants have rights superior to those of Plaintiff." *Id.* Dwarven Forge argues that Mr. Pokorny's deposition in this case "would be completely duplicated and a waste of the parties' resources," because his deposition was already taken in the USPTO proceeding. *Id.* at 4–5. Finally, Dwarven Forge asserts the motion for sanctions is defective because it was filed before the scheduled deposition date. *Id.* at 5

In reply, Defendants first emphasize that "[o]nly after the instant motion was filed did [Plaintiff's counsel] propose to conduct the deposition on February 20[] . . . or . . . February 22[] in New York. Defs.' Reply Sanctions at 4 (emphasis omitted). "By that time, . . . fees had been incurred." *Id.* Defendants argue that "Plaintiff's Summary Judgement [sic] Motion is no basis for cancelling a scheduled deposition and refusing to appear." *Id.* at 5. Defendants note Mr. Pokorny's deposition was first scheduled for December 6, and when he didn't show up and Plaintiff's counsel indicated "his belief that the deposition should be quashed," Defendants filed the motion that led to the Court's December 12, 2019 Order. *Id.* Defendants emphasize they only filed the instant motion after Plaintiff's counsel wrote in an e-mail that "Mr. Pokorny will not be produced on the 20[th]," and that "the time for meeting and conferring has long passed." *Id.* at 6.

Finally, Defendants argue that Mr. Pokorny's deposition on January 26, 2018, in the Trademark Trial and Appeal Board ("TTAB") proceeding does not preclude a deposition here because "the proceeding before the TTAB do[es] not involve the same claims as an action alleging unfair competition and trademark infringement." *Id.* at 7 (citations omitted). Defendants contend that the "current proceeding involves different claims, different parties, different remedies, and is currently more than two years after the [TTAB] deposition . . . ." *Id.*

In addition, since then, "Plaintiff has nearly quadrupled its document production . . . [and] identified at least half a dozen [new] witnesses . . . ." *Id.* at 8. In Defendants' view, "Mr. Handel's February 13 email was a constructive failure to appear for the deposition which warrants sanctions." *Id.* at 9. "By refusing to cooperate in its deposition, Plaintiff is effectively taking its case to trial without giving Defendant an opportunity to conduct and complete discovery on Plaintiff's allegations." *Id.* at 10.

The Court agrees.

The filings related to Dwarven Forge's motion to quash additionally urge the Court to deny Mr. Pokorkny's deposition or postpone it until the Court resolves the pending motion for summary judgment. Pl.'s Reply Quash at 11. The Court thus will address both motions here.

As an initial matter, Mr. Pokorny's 2018 deposition in the TTAB proceeding does not preclude a deposition here because "there is no res judicata effect of a cancellation proceeding, such as the TTAB proceeding here, on a subsequent federal lawsuit alleging unfair competition and trademark infringement." *Santos v. Hecht*, No. 06-CV-783 (JFB) (MLO), 2006 WL 2166860, at *2 (E.D.N.Y. July 31, 2006) (citations omitted). As the Second Circuit has recognized, "the issue of likelihood of confusion in a cancellation proceeding may be different from the issue of likelihood of confusion in an action for infringement." *Jim Beam Brands Co. v. Beamish & Crawford Ltd.*, 937 F.2d 729, 734 (2d Cir. 1991); *see also Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ.*, 823 F.3d 153, 163 (2d Cir. 2016) ("The Trademark Board reviews applications to register or cancel trademarks, including certification marks, and it therefore considers whether an application for a new, or junior, mark should be denied on the ground that it is likely to cause confusion with a preexisting, or senior, mark. The context in which the Trademark Board considers likelihood of confusion is therefore somewhat different.").

As to the duty to confer, the Court's prior order set an expedited schedule and process for addressing further discovery disputes between the parties. *See* Order, ECF No. 86. Furthermore, after reviewing the parties' e-mail communications, these e-mail exchanges, while not optimal, satisfy the duty to confer. *Cf. McCulloch v. Hartford Life & Accident Ins. Co.*, 223 F.R.D. 26, 32 (D. Conn. 2004) (finding that "defendant did confer with plaintiff as required by the Federal Rules" based on "evidence that the parties exchanged letters regarding several ongoing discovery issues").

But Dwarven Forge has not provided a valid reason for refusing to produce Mr. Pokorny for a deposition before the close of discovery on January 31, 2020.[4] Significantly, Defendants served a notice of deposition for Mr. Pokorny on November 6, 2019, for December 6, 2019, and again on December 12, 2019. And despite instruction from the Court that the parties "may file the appropriate motion" for a discovery dispute, Order, ECF No. 86, Dwarven Forge did not move to quash Mr. Pokorny's deposition until February 14, 2020, after the close of discovery.

On January 27, 2020, Anthony H. Handal, attorney of record for Dwarven Forge, wrote to Defendants' counsel in an e-mail exchange: "Pokorny Deposition confirmed for February 12, 2020." Ex. E: E-mails, ECF No. 87-5 (Feb. 13, 2020). Then, after more back-and-forth, allegedly by telephone as well as e-mail, Mr. Handal wrote on January 30, 2020, that he intended to schedule the deposition for "Feb 20." Ex. F: E-mails, ECF No. 87-6 (Feb. 13, 2020). Finally, on February 13, 2020, after indicating that he would "move for a protective order quashing [the] notice of deposition," Ex. G: E-mails, ECF No. 87-7 (Feb. 13, 2020); Mr. Handal wrote, "To be

---

[4] On December 12, 2019, after issuing an order related to other discovery disputes, the Court *sua sponte* amended the scheduling order and extended the close of discovery from December 6, 2019, to January 30, 2020. Sua Sponte Scheduling Order, ECF No. 85 (Dec. 12, 2019); *see also* Sua Sponte Scheduling Order, ECF No. 75 (extending discovery to December 6, 2019).

clear, Mr. Pokorny will not be produced on the 20th," Ex. I: E-mail, ECF No. 87-9 (Feb. 13, 2020).

Consequently, because Dwarven Forge has not adequately explained why Mr. Pokorny, its CEO and alleged predecessor-in-interest to the trademark at issue, has not been deposed yet —nor as to why it cancelled a scheduled out-of-state deposition only a week before—the Court will require him to be deposed and will impose monetary sanctions in the amount of $405.80, the amount equal to the unreimbursed costs associated with the late cancelling of Mr. Pokorny's deposition. *See* Kaiser Aff. ¶ 11, ECF No. 99-1 (Feb. 24, 2020) (attesting, *inter alia*, as true under penalty of 18 U.S.C. § 1001, that Defendants' counsel incurred $280.80 in costs related to a non-refundable airline ticket as well as a related $125 cancellation fee).

Although the Court is "not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record," *S. New England Tel. Co.*, 624 F.3d 123, 148 (2d Cir. 2010), there is no need to dismiss this case at this time, *see Edmonds v. Seavey*, 379 F. App'x 62, 64 (2d Cir. 2010) (summary order) (affirming sanctions for appellant's counsel's failure to attend a deposition he noticed); *Sterling Promotional Corp. v. Gen. Accident Ins. Co. of N.Y.*, 86 F. App'x 441, 443–44 (2d Cir. 2004) (summary order) (affirming dismissal as a sanction when plaintiff corporation's president "effectively evaded his deposition for over two years," plaintiff "was clearly on notice that its failure to produce [its president] for deposition would result in dismissal," and defendant "was prejudiced by the inability to depose" plaintiff's president). But if further delays with respect to this deposition occur, the Court will consider the imposition of further sanctions, including dismissal for failure to prosecute as well as the imposition of attorney's fees and costs for any further efforts necessary to have Mr. Pokorny deposed.

Accordingly, consistent with this Court's inherent authority to manage its docket to resolve cases efficiently and expediently, *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016), the Court will deny Dwarven Forge's motion to quash Mr. Pokorny's deposition, and will require him to be deposed, but will not dismiss this case or impose any other sanction, outside of the monetary sanction related to the late cancellation of Mr. Pokorny's deposition—at least not right now. *See West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) ("dismissal is a 'drastic remedy'" (internal citation omitted)).

### C. Amended Motion for Summary Judgment

Defendants seek dismissal of Dwarven Forge's amended motion for summary judgment, "with prejudice, and an award of Defendants' attorneys' fees for having to object to it." Defs.' Obj. Mem. at 1. They argue that neither the original nor amended motion included a Statement of Undisputed Material Facts as required by Local Rule 56(a)(1). *Id.* at 1–2. Defendants contend that "[g]iven Plaintiff's failures to comply with the Local Rules, Defendants are simply unable to respond to the Amended Motion with the level of specificity and detail required of them." *Id.* at 5. According to Defendants, "Plaintiff opts to violate the Local Rules in the name of judicial efficiency." *Id.* at 9.

In its reply, Dwarven Forge filed "the statement of uncontested facts strictly following the format required by the rules, citing to the declarations and the evidence . . . ." Pl.'s Reply Summ. J. at 2. In its view, "there has been substantial compliance with the rules and remedial action is being taken herewith." *Id.* at 3.

The Court disagrees.

In a motion for summary judgment, the burden is on the movant to establish that there are no genuine issues of material fact in dispute and that it is "entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). In this District, a motion for summary judgment must be accompanied by a Local Rule 56(a)(1) Statement of Undisputed Material Facts. *See* D. Conn. L. Civ. R. 56(a)(1) ("A party moving for summary judgment shall file and serve with the motion and supporting memorandum a document entitled 'Local Rule 56(a)1 Statement of Undisputed Material Facts,' which sets forth, in separately numbered paragraphs meeting the requirements of Local Rule 56(a)3, a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried.").

The District further requires that each statement of material fact in the Local Rule 56(a)(1) Statement "be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial." D. Conn. L. Civ. R. 56(a)(3). Finally, the District requires that "[t]he affidavits, deposition testimony, responses to discovery requests, or other documents containing such evidence" be filed and served with the Local Rule 56(a)(1) Statement. *Id.*

*Pro se* parties and represented parties alike must comply with this District's requirements for motions for summary judgment; if they do not, the district court may, in its discretion, deny their motion or impose other sanctions. *See Tross v. Ritz Carlton Hotel Co.*, 928 F. Supp. 2d 498, 503 (D. Conn. 2013) ("In this Circuit, a movant's failure to comply with a district court's relevant local rules on a motion for summary judgment permits, but does not require, a court to dispose of that motion.") (citing *Tota v. Bentley*, 379 F. App'x 31, 32–33 (2d Cir. 2010)); *see also* D. Conn. L. Civ. R. 56(a)(3) ("A party's failure to provide specific citations to evidence in the record as required by this Local Rule may result in . . . the Court imposing sanctions, including, when the movant fails to comply, an order denying the motion for summary judgment . . . .").

18

Courts in this District generally look at whether the motion, despite technical non-compliance, substantially complies such that it would be fair to decide the motion on the merits. *See, e.g.*, *Conley v. Brysgel*, No. 3:17-cv-322 (VAB), 2018 WL 5315237, at *2 (D. Conn. Oct. 26, 2018) (plaintiff's filing, which lacked a Local Rule 56(a)(1) Statement, "cannot be said to have substantially complied with the Rule because it fails to identify specifically what statements [plaintiff] believes are material facts that are not in dispute. Requiring [d]efendants to answer this motion in a full opposition brief in compliance with the Local Rules would unfairly shift the burden of summary judgment—which is on the moving party, [plaintiff]—onto [d]efendants."); *Bunting v. Kellogg's Corp.*, No. 3:14-cv-621 (VAB), 2016 WL 659661, at *1–2 (D. Conn. Feb. 18, 2016) ("Without a Local Rule 56(a)1 Statement, the Court cannot fairly determine the undisputed facts in this case. Such a determination is essential to evaluating a summary judgment motion.").

Here, Dwarven Forge has failed to file a proper a Local Rule 56(a)(1) Statement and therefore has not substantially complied with the Local Rule. The Court refuses to credit the statement's numerous citations to Mr. Pokorny's declaration because—as discussed above and evidenced by the numerous discovery-related filings—Dwarven Forge refused to have Mr. Pokorny deposed beforehand. Requiring Defendants to answer this motion in a full opposition brief in compliance with the Local Rules would unfairly shift the burden of summary judgment onto Defendants.

Accordingly, the Court will deny Dwarven Forge's amended motion for summary judgment, without prejudice, for failure to comply with Local Rule 56(a)(1).

## IV.     CONCLUSION

For the reasons explained above, the motion to strike is **DENIED**; the motion to compel Mr. Pokorny's deposition is **GRANTED** and the motion for sanctions is **GRANTED** with respect to the $405.80 in costs associated with the cancelled trip to take Mr. Pokorny's deposition, but otherwise **DENIED without prejudice to renewal**, in the event Mr. Pokorny continues to avoid being deposed; the motion to quash is **DENIED**; and the amended motion for summary judgment is **DENIED without prejudice**.

The Court also will issue a separate order amending the current scheduling order as follows:

- Mr. Pokorny shall be deposed by **July 31, 2020**.

- To the extent that the deposition of Mr. Pokorny requires any further discovery by Defendants, this discovery and this discovery only will be permitted until **September 4, 2020**.

- Dispositive motions shall be due by **October 2, 2020**. Any such motions and responses to any such motions must comply with both Rule 56 of the Federal Rules of Civil Procedure and any related Local Rule of this Court.

To the extent any further discovery issue warrants relief under the Federal Rules of Civil Procedure, the parties may file the appropriate motion, i.e., a motion to compel or a motion for a protective order, without a discovery conference. Any response to any motion filed for discovery relief shall be filed within seven (7) days, and any reply is due within three (3) days.

The Court will issue a ruling and order based on the parties' filings only. To the extent that sanctions are warranted based on the lack of justification for a party's position, the Court will order the awarding of any sanctions, as deemed appropriate.

**SO ORDERED** at Bridgeport, Connecticut, this 26th day of June, 2020.

    /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge